UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07CV-689-H

ROTARY PAPER MANIFOLD COMPANY           PLAINTIFF

V.

GIRAFFE, INC., et al                   DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Rotary Paper Manifold Company ("RPM") brings this action for breach of contract against Defendant Giraffe, Inc., f/k/a Giraffe Business Forms, Inc. ("Giraffe, Inc."), and various other related entities and individuals, including Giraffe Stables, LLC, Michael D. Brotzge d/b/a/ Giraffe Stables LLC, n/k/a Giraffe Document Solutions, Giraffix LLC ("Giraffix"), Automated Distribution Solutions, Inc. ("ADS"), and John Does 1-5. The matter is before the Court on Plaintiff's Motion to Amend/Correct Amended Complaint. For the reasons explained below, the Court will deny the motion.

**I.**

Plaintiff RPM is an Illinois company that sells and distributes paper to its customers for use in commercial printing. Defendant Giraffe, Inc. was a Kentucky company, operating out of Indiana, that printed business forms. Giraffe, Inc.'s operations were financed initially with various loans from Stock Yards Bank & Trust Company ("Stock Yards"). In 1992, Giraffe, Inc. began buying paper from RPM on credit. By the time RPM filed this lawsuit in December 2007, Giraffe, Inc. had failed to pay more than $520,000 for paper provided by RPM. In the original complaint, RPM sought relief against Giraffe, Inc. for breach of contract, unjust enrichment and

account stated. It also sought relief against two other defendants – Giraffe, Inc. principal Michael Brotzge ("Brotzge") and Giraffe Stables, LLC – on the assertion that they were simply alter egos of Giraffe, Inc. In May 2008, Plaintiff requested, and was granted, leave to amend its original complaint to add two more alleged alter egos: Giraffix LLC and ADS. RPM alleged that ADS, run by former Giraffe, Inc. principal Brotzge, was paying Giraffe, Inc.'s debts. Furthermore, RPM alleged that pursuant to a transaction that was not negotiated at arms length, Giraffix LLC was a successor to Giraffe, Inc.

In February 2009, the Court entered default judgments in the amount of $520,104.44 against Giraffe, Inc., Giraffe Stables, LLC and ADS. On December 1, 2009, the Court entered an order resetting discovery deadlines concerning the remaining parties and allowing RPM until February 16, 2010 to file any appropriate motions or status reports. Within that time frame, the parties agreed to judgment in favor of RPM against Giraffix LLC, leaving Michael Brotzge and John Does 1-5 as the only remaining Defendants. After that deadline, on March 17, 2010, RPM filed the present motion to amend, based on belated receipt of certain discovery documents. Specifically, Plaintiff asserts that the Voluntary Collateral Surrender, Disposition and Forbearance Agreement ("Collateral Sale Agreement"), between Giraffe, Inc., Stock Yards, Giraffix LLC and Michael Simon ("Simon"),[1] made Simon liable for the Giraffix debt to RPM, because the debt originated from RPM's status as a creditor of Giraffe, Inc., and Simon agreed to indemnify Giraffix LLC for such debts. The relevant section of the Collateral Sale Agreement reads:

> 12.3 <u>Indemnification of Purchaser.</u> Guarantor [Simon] shall indemnify and hold

---

[1] Simon and Brotzge are the former principals of Giraffe, Inc. as well as members of a company, Granite Partners, LLC, that is a member of Giraffix LLC.

2

> Purchaser [Giraffix] harmless from all claims, demands, causes of action, suits, losses, settlements, judgments, costs and expenses ... arising out of any claim, demand or cause of action asserted or alleged against Purchaser [Giraffix] by any creditor of Debtor [Giraffe, Inc.] alleging that Purchaser [Giraffix] is liable for any obligation incurred by Debtor [Giraffe, Inc.].

Collateral Sale Agreement, §12.3, pp. 8-9. Based on this language – and the Agreed Judgment Plaintiff has obtained, against Giraffix LLC, as a creditor of Giraffe, Inc. – Plaintiff requests leave to join Simon as a party.

**II.**

Plaintiff seeks to amend its first Amended Complaint under Federal Civil Procedure Rule 15, which provides that a Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Defendant Giraffix LLC objects on three grounds: (1) the amendment is not timely, (2) it was unduly delayed and (3) it is futile because RPM is not a third-party beneficiary as alleged in the Second Amended Complaint. The Court finds the first two arguments unconvincing because RPM's delay was based, at least in part, on belated production of relevant discovery documents.[2] Only Giraffix LLC's third argument requires a more detailed review.

The U.S. Supreme Court recognizes "futility" as one of the reasons a court can deny a motion to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Additionally, the Sixth Circuit "has addressed the issue of 'futility' in the context of motions to amend, holding that where a proposed amendment would not survive a motion to dismiss, the court need not permit the amendment." *Thiokol Corp. v. Department of Treasury, Revenue Div.*, 987 F.2d 376, 383 (6th Cir. 1993)(citing *Neighborhood Development Corp. v. Advisory Council on Historic*

---

[2] Plaintiff asserts that he did not receive the final copy of the "Voluntary Collateral Surrender, Disposition and Forbearance Agreement," upon which the allegations in the Second Amended Complaint are based, until March 3, 2010 – weeks after the deadline for discovery and motions had passed.

*Preservation*, 632 F.2d 21, 23 (6th Cir. 1980)).

As noted above, Plaintiff's proposed Second Amended Complaint seeks to add Simon as a party based on the provision in the Collateral Sale Agreement in which Simon agrees to indemnify Giraffix LLC from any debts asserted by creditors of Giraffe, Inc.[3] If enforced, that provision would require Simon to pay the judgment RPM has against Giraffix LLC. RPM seeks to enforce the indemnity provision, even though it was not a party to the Collateral Sale Agreement, by asserting that it is a third-party beneficiary to the Agreement.

The Court looks to Kentucky law to determine whether RPM could possibly be designated a third-party beneficiary of the Collateral Sale Agreement. Kentucky courts hold that "no stranger to a contract may sue for its breach unless the contract was made for his benefit." *Sexton v. Taylor County*, 692 S.W.2d 808, 810 (Ky. Ct. App. 1985)(citing *Long v. Reiss*, 160 S.W.2d 668 (Ky. 1942)). Only an intended beneficiary, and not an incidental one, can enforce an agreement. *Louisville Gas & Elec. Co. v. Cont'l Field Sys., Inc.*, 420 F.Supp.2d 764, 770 (W.D.Ky. 2005). To be an intended beneficiary, a party such as RPM has to show that the contract was "made for his benefit ... the mere fact that he will be incidentally benefitted by the performance of the contract is not sufficient to entitle him to enforce it." *Long*, 160 S.W.2d at 673 (citing *Ball v. Cecil*, 148 S.W.2d 273, 274 (Ky. 1941)). "[T]he central issue to determining whether a contract is intended to benefit a third party is the relevant intent of the promisee who purchases the promise from the promisor." *Louisville Gas & Elec. Co.*, 420 F.Supp.2d at 771 (quoting *United States v. Wood*, 887 F.2d 453, 457 (6th Cir. 1989)).

---

[3] Plaintiff's third-party beneficiary claim is the sole claim asserted against Simon in the Second Amended Complaint. Plaintiff does not seek to add Simon as one of the "John Doe" Defendants, who are alleged unknown alter egos of Giraffe, Inc.

4

Thus, the Court must determine whether it is plausible that the promisee, Simon, intended to benefit RPM when he agreed to indemnify Giraffix LLC in section 12.3 of the Collateral Sale Agreement. Two additional provisions of the contract are instructive in this regard. First, the Collateral Sale Agreement specifically references RPM's lawsuit against Giraffe, Inc. in the "Representations and Warranties of Debtor" Section:

> Except for an action filed against Debtor by RPM Rotary Paper that seeks to collect a past due unsecured trade debt ... there are no actions, suits, or proceedings pending or, to the best of Debtor's knowledge threatened before any court or administrative agency against Debtor that could materially adversely affect the financial condition and operations of Debtor or materially adversely affect any of the Collateral.

Collateral Sale Agreement §8.1(c), p. 6. Additionally, Section 16 of the Contract, titled "Binding Effect," says "[t]his agreement shall be binding upon, *and inure to the benefit of*, the parties hereto, and their respective successors and assigns." Collateral Sale Agreement §16, p. 10 (emphasis added).

When considering these provisions and the Agreement as a whole, it is clear that Simon's Indemnity promise in Section 12.3 was designed primarily to benefit Stock Yards Bank. At the time of the Collateral Sale Agreement, the bank had an interest in the financial viability of the purchaser, Giraffix LLC, which was promising to pay the bank more than $300,000 to buy Giraffe, Inc.'s property, as well as to give the bank a percentage of Giraffix's future income derived from Giraffe, Inc.'s accounts. The promise of a Guarantor, such as Simon, that Giraffix LLC would not be encumbered by Giraffe Inc.'s debt, gave the bank additional assurance that it would be paid.

The reference in the "Representations and Warranties of the Debtor" section of the Agreement further supports this finding. In that section, Giraffe, Inc. represented that the RPM

5

action was the only pending action and that no other actions were pending or threatened against the Debtor. Clearly, this representation is made not to show that RPM is a beneficiary of the contract, but instead to reassure Stock Yards that no other claims were being made against the collateral Stock Yards was selling to Giraffix.

Finally, the "Binding Effect" provision of the Collateral Sale Agreement, which says the contract "inure[s] to the benefit" of the parties to the deal, makes it crystal clear that RPM was not an intended beneficiary of the contract. If Simon, or the other parties to the contract, had intended to make RPM an intended beneficiary, they could have said so.[4] Because the facts clearly show that RPM was only an incidental beneficiary of the Collateral Sale Agreement, rather than a party with the power to enforce it, its third-party beneficiary claim fails as a matter of law.

RPM argues that this finding is inappropriate because its Second Amended Complaint clearly asserts that it is a third-party beneficiary. However, in *Iqbal* and *Twombly*, the Supreme Court made clear that legal assertions, alone, are not enough to sustain a complaint; the facts must also put forth a plausible claim for relief. Here, Plaintiff merely offers the agreement itself and then asserts that it is possible the agreement was meant to benefit Plaintiff. Neither common sense, nor the actual text itself, supports such an argument.

Plaintiff also argues that a third-party beneficiary's benefit does not have to be the only or even the principal object of the contract. *See Young v. Kenneth Jackson Elec., Inc.*, 2006 WL 2787077 at *2 (Ky. App. 2006)(unpublished). Even so, Kentucky law is clear that to enforce a contract, a third-party beneficiary must be an *intended* beneficiary of a contract. *Louisville Gas*

---

[4] RPM apparently only learned of this agreement through the current litigation. This fact, too, suggests that RPM was not an intended beneficiary of the contract.

*& Elec. Co.*, 420 F.Supp.2d at 771. Here, Plaintiff was not an intended beneficiary of the Collateral Sale Agreement.

Finally, Plaintiff cites cases from California and Indiana which hold that whether a plaintiff is a third-party beneficiary is a question of fact that generally cannot be resolved in a 12(b)(6) Motion to Dismiss. The Court disagrees that such a holding applies to the current situation. RPM's motion to amend comes two years after the commencement of the present action. Certain facts and documents, including some not typically available to a Court deciding a motion to dismiss, are already part of the record.[5] The relationship between the various parties is clear. The purpose of the contract is clear. Plaintiff has not offered any facts whatsoever that would tend to suggest the contract was intended to benefit anyone other than the obvious party, Stock Yards Bank. Furthermore, the Collateral Sale Agreement clearly and unambiguously indicates that it is for the benefit of the parties to the contract. Under such circumstances, allowing RPM to amend its complaint would be futile. For these reasons, the Court will deny Plaintiff's Motion to Amend.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's Motion to Amend is hereby DENIED.

This is NOT a final order.

---

[5] In considering a 12(b)(6) motion to dismiss, a court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, and ... documents that a defendant attaches to a motion to dismiss ... if they are referred to in the plaintiff's complaint and are central to her claim." *Bariteau v. PNC Fin. Servs. Group, Inc.*, 285 Fed. Appx. 218, 220 (6th Cir. 2008)(internal quotation marks omitted).

cc: Counsel of Record